UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X          Case No.:   1:22-cv-03855
SARAH REED,

                          Plaintiff,

                                                                                  **COMPLAINT**
              -against-

AIDS HEALTHCARE FOUNDATION,                                    Plaintiff Demands a
                                                                                   Trial by Jury
                          Defendant.
----------------------------------------------------------------X

Plaintiff, by and through her attorneys, Phillips & Associates, PLLC, complains of Defendant

AIDS HEALTHCARE FOUNDATION, upon information and belief, as follows:

## INTRODUCTION

1.  Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C.

    §2000e et seq. ("Title VII"), as well as to remedy violations of the New York State Executive

    Law and the Administrative Code of the City of New York, seeking damages to redress the

    injuries she has suffered as a result of being discriminated against by her employer, or

    alternatively, her prospective employer, on the basis of her sex/gender, pregnancy, and actual

    and/or perceived (temporary) disability, together with failure to engage in the interactive

    process and/or cooperative dialogue, failure to provide a reasonable accommodation,

    retaliation, and wrongful termination, or in the alternative, failure to hire.

## JURISDICTION AND VENUE

2.  The Court has jurisdiction pursuant to 42 U.S.C. 2000e et seq., 28 U.S.C. §1331, §1343, and

    supplemental jurisdiction thereto.

3.  The Court also has jurisdiction pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

4.  Venue is proper in this district based upon the fact that a substantial part of the events and omissions giving rise to the claim occurred within the Southern District of the State of New York.  28 U.S.C. §1391(b).

5.  On or about April 30, 2021, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

6.  On or about March 17, 2022, Plaintiff received a Notice of Right to Sue Letter from the EEOC.

7.  This action is brought within ninety (90) days of said Notice of Right to Sue Letter.

## PARTIES

8.  Plaintiff is a pregnant female resident of the State of New York, County of Bronx.

9.  At all times material, Defendant AIDS HEALTHCARE FOUNDATION (hereinafter also referred to as "AHF") was and is a foreign not-for-profit corporation duly incorporated in the State of California.

10.  At all times material, Defendant AHF was and is a foreign not-for-profit corporation duly authorized to conduct, and which does conduct, business in the State of New York.

11.  At all times material, Defendant AHF was and is the largest HIV/AIDS healthcare provider in the world, headquartered in 6255 Sunset Blvd., 21st Fl., Los Angeles, CA 90028.

12.  At all times material, Defendant AHF operates an office located at 352 7th Avenue, Suite 1205, New York, NY 10001.

13.  At all times material, Defendant AHF was Plaintiff's employer.

14.  In the alternative, Defendant AHF was Plaintiff's prospective employer.

2

## MATERIAL FACTS

15. On or about October 14, 2020, Defendant AHF's "Talent Acquisition Recruiter," Nicole Castaldo, telephoned and emailed Plaintiff regarding her recent online application for a full-time "Research Coordinator – Level 2" position.  Plaintiff confirmed her interest and Ms. Castaldo scheduled a preliminary interview for October 16, 2020 via Microsoft Teams, a videoconferencing service.

16. At the time, Plaintiff was approximately five (5) months pregnant, but she was not visibly showing and she had a healthy pregnancy.  At the time, Plaintiff did not disclose her pregnancy to Ms. Castaldo because she anticipated working until her due date, and because she feared that Defendant AHF would reject her due to the stigma associated with hiring pregnant women.

17. On or about October 16, 2020, Plaintiff interviewed with Ms. Castaldo for the position.  Shortly after the interview, Ms. Castaldo scheduled Plaintiff for another interview with Defendant AHF's "National Medical Director of Clinical Standards, Policy & Education," Dr. Ricky Hsu.

18. On or about October 20, 2020, Plaintiff met with Dr. Hsu at Defendant AHF's 352 7th Avenue, Suite 1205, New York, NY 10001 location.  During the interview, Plaintiff discussed her qualifications and interest in the position.  Dr. Hsu informed Plaintiff that Ms. Castaldo would contact her once all eligible candidates had been interviewed and they had made a decision.

19. On or about November 6, 2020, in an email, Ms. Castaldo informed Plaintiff that Defendant AHF hired another candidate for the position.

20. On or about December 23, 2020, Ms. Castaldo emailed Plaintiff to notify her that the "Research Coordinator – Level 2" position was newly available, and to ask whether she was still interested in the position.  Plaintiff confirmed her interest, and Ms. Castaldo scheduled Plaintiff for a follow-up Microsoft Teams interview with Dr. Hsu for December 30, 2020.

21. On or about December 30, 2020 at 4:30 p.m., Plaintiff again interviewed with Dr. Hsu for the position.  During the interview, which he called a "formality," Dr. Hsu offered Plaintiff the position and welcomed her to "the AHF team."  Dr. Hsu then asked Plaintiff to inform Defendant AHF's "Human Resources (HR) Department" that he had made a verbal offer of employment, so they could send her a written offer letter and start the "new hire" paperwork.

22. During the meeting, and in order to be forthcoming with her new employer, Plaintiff told Dr. Hsu that she was approximately seven months pregnant, and she planned on working until her due date of March 15, 2021.  Plaintiff also stated that she intended to take two (2) weeks off after delivering her baby, and temporarily work on a part-time basis upon her return.  This put Defendant AHF on notice of Plaintiff's pregnancy and request for a reasonable accommodation.  Dr. Hsu approved Plaintiff's requests and instructed her to also inform HR that he approved her requests for leave and a temporary part-time schedule upon her return from leave.

23. The next day, on or about December 31, 2020, in an email, Plaintiff told Ms. Castaldo that she received a verbal job offer from Dr. Hsu, that they discussed her "start date, pregnancy, and return to work," and that she could start working within one (1) week of the conclusion of her background check.  In the email, Plaintiff specifically wrote, "In terms of my pregnancy, we agreed to 2 weeks off postpartum, and returning back on a part-time basis."  In response, Ms. Castaldo asked Plaintiff to give her a call.  Plaintiff complied.

24. During their telephone conversation, Ms. Castaldo asked Plaintiff whether she was going to accept the job offer.  Plaintiff again confirmed that she would, and Ms. Castaldo sent her a link to formally accept the offer.

25. During their conversation, Ms. Castaldo also stated, "We can look at a start date of January 18, 2021." Then, referring to Plaintiff's request for pregnancy-related protected leave, Ms. Castaldo stated, "**I don't know anything about FMLA or how any of the laws work, so I'm willing to reach out to HR for you**."

26. That same day, Plaintiff formally accepted Defendant AHF's offer of employment.

27. Plaintiff's job offer was for an in-person office position, contingent upon successful completion of a background screening and receipt of the tuberculosis (TB) and measles, mumps, and rubella (MMR) vaccines, as required by Defendant AHF.

28. In her role, Plaintiff was going to earn a salary of $55,000/year and would report directly to Dr. Hsu. As of her anticipated start date of January 18, 2021, Plaintiff would gain access to benefits such as medical, dental and vision insurance, credit union, and a 401(k).

29. Plaintiff would also become eligible for medical benefits on the first of the month following 60 days of employment with Defendant AHF, which was especially important to Plaintiff because of the anticipated birth of her child.

30. However, shortly after learning about Plaintiff's pregnancy, Defendant AHF began to discriminate against Plaintiff on the basis of her sex/gender, pregnancy, actual and/or perceived disability, and request for protected leave.

31. On or about January 5, 2021, one (1) week after Plaintiff accepted Defendant AHF's job offer, Dr. Hsu telephoned Plaintiff and stated, "**I spoke to HR and they are concerned about your pregnancy and they don't believe that you will return in two (2) weeks. They're asking how you are able to have a baby and return so soon**." Plaintiff was surprised by Mr. Hsu's statements, but she told him that she had a prior pregnancy and she felt comfortable returning to work/school for 17 credit hours within ten (10) days of delivering her baby. Plaintiff stated

that the only way in which she would not be able to return within two weeks at Defendant AHF

was if she needed to have a cesarean (C-section), which Dr. Hsu approved, but nonetheless

replied, "I don't know how [HR] is gonna handle this."

32. During that same call, Dr. Hsu told Plaintiff **Defendant AHF's HR department proposed**
**that Plaintiff enter into a contractor agreement (instead of the full-time position she had**
**already accepted)**.  Dr. Hsu stated that he had no further information and directed Plaintiff to
contact HR directly.

33. Later that same day, in an email to Plaintiff, Ms. Castaldo and "Director of HR," Jennifer M.
O'Hare (Grillo), Dr. Hsu wrote that Plaintiff anticipated taking 2 weeks of leave after
delivering her baby, followed by a part-time schedule for no longer than three months in order
to accommodate her newborn's childcare, with 3-4 days of work full time in the office and 1-
3 days off."

34. In the email, Mr. Hsu also mentioned the "independent contractor" position, writing, "**Things**
**that might allow this to happen with [Defendant] AHF include a) being a contracted**
**employee until back full-time b) using FMLA/short term disability or other methods**."
Mr. Hsu also asked Ms. Castaldo and Ms. Grillo to contact Plaintiff and "[l]et us know some
options on how we can best offer her this position given these **constraints**."

35. On or about January 6, 2021, Ms. Grillo telephoned Plaintiff and stated, "**We can't hire you**
**full time, so you can then take 2 weeks off, and then come back on a part-time basis.  You**
**can't do short term disability because pregnancy is a pre-existing condition and you're**
**not covered by the FMLA, so we're just gonna put you on a contract**."

36. Defendant AHF perceived Plaintiff's requests for a reasonable accommodation to be an inconvenience and did not engage in a good faith interactive process and/or cooperative dialogue.

37. Defendant AHF terminated Plaintiff's full-time position because of her pregnancy, and because it did not want to provide her with any pregnancy-related reasonable accommodations or benefits.

38. In an effort to persuade Plaintiff to voluntarily agree to the temporary contract position, rather than her full-time "Research Coordinator" position, Ms. Grillo told Plaintiff that she would be able to perform her contract role remotely.  Ms. Grillo also stated, "I'll send you the contract, just sign it and we'll have Dr. Hsu sign it.  **After the contract ends, *if* you're able to work 20-29 hours a week, we'll bring you on part-time.  If you can work more than 30 hours, we'll bring you on full-time**."

39. On or about January 11, 2021 and January 12, 2021, Plaintiff continued her preparation for her January 18, 2021 full-time start date by communicating with Ms. Castaldo about her background check and the TB/MMR vaccines.

40. On or about January 13, 2021, in an email, Ms. Grillo sent Plaintiff a copy of the independent contractor contract, which indicated that the position paid $26.45 per hour (hourly, rather than salary), with no guaranteed number of hours per week and with no benefits.

41. Defendant AHF proposed a temporary contract because they did not believe she would return to work after her protected leave and did not want to accommodate her requests for a reasonable accommodation in the full-time role.

42. Plaintiff was shocked by Defendant AHF's sudden change concerning the terms and conditions of her employment, but she felt that she had no choice but to accept Defendant AHF's

temporary contract because she needed an income and reasonably believed that she could commence her full-time duties upon her return from leave.  Plaintiff merely skimmed the contract, signed it and returned it to HR.

43. However, later that same day, Plaintiff reviewed the contract again and realized that it was on a temporary basis only, with no guarantee of renewal, and an automatic end date of April 14, 2021, "[u]nless [Defendant AHF] terminates the Agreement at an earlier time, in its sole discretion, upon 30 days' prior written notice."

44. Additionally, the contract specifically stated, "Contractor is not entitled to participate in any employee benefits provided by AHF, including but not limited to pension plans, bonus, stock or similar benefits that AHF provides for its employees."

45. Later that evening, Plaintiff sent another email and requested to speak with Ms. Grillo about the contract before moving forward with the temporary position.

46. The following day, Plaintiff again contacted Ms. Grillo but she was unavailable until the following Monday, January 18, 2020 due to the Martin Luther King, Jr. federal holiday.

47. On or about January 18, 2021, on her original start date, Plaintiff received an email from Ms. Castaldo informing her that she was expected to start her contract position the following day, January 19, 2021, and that she needed to come into the office that Thursday, January 21, 2021.

48. On or about January 19, 2021, Plaintiff again telephoned Ms. Grillo concerning the terms of the contract.  During the call, Plaintiff stated, "I understand you guys want to talk about some of the terms in the contract."  Ms. Grillo rudely replied, "No, *you* want to talk about the terms of the contract." Plaintiff continued, "**I feel like the terms of the initial offer of employment changed as soon as I revealed my pregnancy and the two weeks of leave**."  Ms. Grillo did not respond, and simply stated, "That has nothing to do with it."  Ms. Grillo also refused to

extend the contract past April 14, 2021, stating, "This is a 3-month contract only.  You're too focused on the date of April 14, 2021.  **On April 14, 2021, we can decide whether extend your contract, or bring you on part-time or full-time**."

49. During the telephone conversation, **Plaintiff also asked whether Defendant AHF would simply honor the original full-time job offer, which she had already accepted.  Ms. Grillo coldly replied, "I don't think at this time this is gonna work for you**," and abruptly ended the telephone call.

50. Defendant AHF terminated Plaintiff because of her sex/gender, pregnancy, and actual and/or perceived (temporary) disability, and her request and/or need for a reasonable accommodation.

51. In the alternative, Defendant AHF failed to hire Plaintiff because of her pregnancy and her request and/or need for a reasonable accommodation.

52. Defendant AHF would not have terminated Plaintiff but for her sex/gender, pregnancy, and actual and/or perceived (temporary) disability, and her request and/or need for a reasonable accommodation.

53. In the alternative, Defendant AHF would not have failed to hire Plaintiff but for her sex/gender, pregnancy, and actual and/or perceived (temporary) disability, and her request and/or need for a reasonable accommodation.

54. Defendant AHF offered Plaintiff a temporary 3-month contract of employment in retaliation for disclosing her pregnancy and her request and/or need for a reasonable accommodation.

55. Defendant AHF ended the employment process for a full-time or a temporary position because of Plaintiff's complaints about its unlawful employment practices.

56. As a result of Defendant AHF's actions, Plaintiff felt and continues to feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

57. As a result of Defendant AHF's discriminatory and intolerable treatment of Plaintiff, she suffered, and continues to suffer, severe emotional distress and physical ailments.

58. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.  Plaintiff has further experienced severe emotional and physical distress.

59. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower courts.

60. As Defendant AHF's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against Defendants AHF.

**AS A FIRST CAUSE OF ACTION**
**UNDER TITLE VII**
**<u>DISCRIMINATION</u>**

61. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

62. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended, for relief based upon the unlawful employment practices of Defendant AHF.  Plaintiff complains of Defendant AHF's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex and pregnancy.

63. Defendant AHF engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff on the basis of her sex, pregnancy, and actual and/or perceived

(temporary) disability, together with creating a hostile work environment, and wrongful termination or in the alternative, failure to hire.

## AS A SECOND CAUSE OF ACTION
### UNDER TITLE VII
### RETALIATION

64. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

65. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be an unlawful employment practice for an employer:

> "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

66. Defendant AHF engaged in an unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.* by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment, because of her opposition to its unlawful employment practices.

## AS A THIRD CAUSE OF ACTION
### UNDER STATE LAW
### DISCRIMINATION

67. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

68. Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's … sex… pregnancy… disability… to refuse to hire or employ or to bar or to discharge from employment such individual or to

discriminate against such individual in compensation or in terms, conditions or privileges of employment."

69. Defendant AHF engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex, pregnancy, and actual and/or perceived disability, together with failure to engage in the interactive process, failure to provide a reasonable accommodation and wrongful termination, on in the alternative, failure to hire.

70. Plaintiff hereby makes a claim against Defendant AHF under all of the applicable paragraphs of Executive Law Section 296.

## AS A FOURTH CAUSE OF ACTION
### UNDER STATE LAW
### FAILURE TO PROVIDE A REASONABLE ACCOMMODATION

71. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

72. New York State Executive Law §296(3)(a) provides:

> "It shall be an unlawful discriminatory practice for an employer, licensing agency, employment agency or labor organization to refuse to provide reasonable accommodations to the known disabilities of an employee, prospective employee or member in connection with a job or occupation sought or held or participation in a training program."

73. Defendant AHF engaged in an unlawful discriminatory practice by discriminating against Plaintiff for her actual and/or perceived disability, together with together with failure to engage in the interactive process, failure to provide a reasonable accommodation, and wrongful termination, or in the alternative, failure to hire.

**AS A FIFTH CAUSE OF ACTION**
**UNDER STATE LAW**
**<u>RETALIATION</u>**

74. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

75. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

76. Defendant AHF engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against the Plaintiff because of her opposition to her employer's unlawful employment practices, including, but not limited to terminating Plaintiff's full-time position and offering her a temporary contract shortly after she revealed her pregnancy.

**AS A SIXTH CAUSE OF ACTION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**<u>DISCRIMINATION</u>**

77. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

78. The Administrative Code of City of New York, Title 8, §8-107 [1] provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee of agent thereof, because of the actual or perceived … gender… pregnancy… disability… of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

79. Defendant AHF engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working

13

conditions, and otherwise discriminating against the Plaintiff on the basis of her sex/gender, pregnancy, and actual and/or perceived (temporary) disability, together with failure to engage in the cooperative process, failure to provide a reasonable accommodation, and wrongful termination, or in the alternative, failure to hire.

## AS A SEVENTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## FAILURE TO PROVIDE A REASONABLE ACCOMMODATION

80. Plaintiff repeats, reiterates and re-alleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

81. The Administrative Code of the City of New York §8-107(15)(a) provides:

> "[A]ny person prohibited by the provisions of this section from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity."

82. Defendant AHF engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code §8-107(15)(a) by failing to engage in the cooperative dialogue, failing to provide a reasonable accommodation, and wrongful termination, or in the alternative, failure to hire.

## AS AN EIGHTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## RETALIATION

83. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

84. The New York City Administrative Code Title 8-107(7) provides that:

> "It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner

14

against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter…"

85. Defendant AHF engaged in an unlawful and retaliatory discriminatory practice by retaliating, and otherwise discriminating against Plaintiff, including, but not limited to terminating Plaintiff's full-time position and offering her a temporary contract shortly after she revealed her pregnancy, and/or failing to hire Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant AHF:

A. Declaring that the Defendant AHF engaged in unlawful employment practices prohibited by Title VII, the New York State Executive Law and the Administrative Code of the City of New York, on the basis of Plaintiff's sex/gender, pregnancy, actual and/or perceived (temporary) disability, failure to engage in the interactive process/cooperative dialogue, retaliation and wrongful termination or, alternatively, failure to hire.

B. Awarding damages to the Plaintiff, for all lost wages and benefits, past and future, back pay and front pay and to otherwise make Plaintiff whole for any losses suffered as a result of Defendant AHF's unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant AHF's unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff demands judgment against Defendant AHF, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: May 12, 2022
      New York, New York

By: _____

**Phillips & Associates, PLLC**
*Attorneys for Plaintiff*
Silvia C. Stanciu, Esq.
45 Broadway, Suite 430
New York, New York 10006
(212) 248-7431